## CAROLINE McCULLY

*v.*

JAMES LUM, executor of the last will and testament of John Lum, deceased.

1. J. L., by his will, gave the use of $3,000, which, at the date of the will, was invested in mortgage upon lands in Virginia, to his sister for her life. The executor of the will collected the interest from the mortgage until the mortgagee became bankrupt, and then, finding that the mortgaged premises had so greatly depreciated in value that he could not sell them for enough to realize the principal sum secured by the mortgage, took the rents and profits of the land, they being less than the interest upon the mortgage, until the mortgagee died, and then, at a public sale, managed by one son of the mortgagee, sold the mortgaged premises to another son of the mortgagee for $1,500, and paid the son who managed the sale, he being a lawyer, $100, besides disbursements, for his services. The lawyer and the purchaser were nephews of the executor.

2. In accounting, the executor charged himself with the income he received and with the $1,500 realized at the sale, and prayed allowance for his disbursements concerning the sale. Upon exceptions to his account—*Held,* (1) that the executor should have charged himself with the principal sum secured by the mortgage, $3,000, and asked allowance for his disbursements and also the loss from the fund by reason of the failure of the investment, and thus have assumed the burden of showing the propriety of his conduct. (2) That he was excusable for continuing the investment and delaying the sale of the mortgaged premises, but that it is incumbent upon him to make it clearly appear that his sale was fairly conducted in interest of his trust, and that the value of the property was realized thereat.

McCully *v.* Lum.

On appeal from an order of the Passaic county orphans court ·disallowing exceptions to the executor's account.

*Mr. Joseph A. Beecher*, for the appellant.

*Mr. Eugene Emley*, for the respondent.

THE ORDINARY.

John Lum died December 21st, 1881. His will was admitted to probate by the surrogate of Passaic county in January, 1882, when James Lum, the executor thereof, assumed the duties of that office. In April, 1883, the executor accounted for his administration of the estate, and the estate was then settled save in one particular. By the third paragraph of the will Caroline McCully, the testator's sister, was given, for her life, the use of $3,000, which was then invested upon the security of a farm of about sixty-two acres, belonging to William Robinson, of Swift Creek, Virginia; and it was provided that, at her death, the principal sum should be divided among certain of the testator's nephews and nieces, among whom was the wife of William Robinson. Mrs. Robinson, however, was not to take a share of the $3,000 unless her husband should pay his indebtedness. Payment of the indebtedness was secured by a trust deed—a form of security in use in Virginia—which bore date on the 31st of October, 1871, and required the payment of Mr. Robinson's bond for $3,000, with interest at the rate of eight per cent. per annum, in twelve months after the date of the deed, that is, on the 31st of October, 1872, providing that if default should be made in the payment it should be the duty of the trustee, who was James Lum, when required to do so, to make sale at public auction of the property conveyed upon ten days' advertisement in a newspaper of Petersburg, Virginia.

When James Lum entered upon his executorship this investment existed.

William M. Robinson, the debtor, was the superintendent of a cotton factory and also a minister of the gospel. He lived upon the mortgaged premises with his wife and family. Until

1885 he regularly paid the interest upon his debt, at six per cent. per annum, to which the executor, apparently without objection upon the part of his *cestui que trust*, had reduced it. In the spring of 1885 the cotton mill failed, and with its failure Robinson became bankrupt. Then he ceased to pay the interest upon his indebtedness, but leased the farm and collected the rents, and, after paying the yearly taxes and insurance, turned over the entire balance of income to the executor. It then appeared that the property was not worth the encumbrance upon it, and that it could not be sold for sufficient money to realize the $3,000. The conduct of Mr. Robinson virtually put the executor in possession of the encumbered property, securing him the income without expense in its collection, and the executor held it in this manner until the spring of 1890, in hope that it could be advantageously sold. The highest price ever offered for it was $1,500, and this offer Mr. Robinson communicated to the executor, suggesting that he would add to it his own note for $1,000, the interest of which, he thought, his children would pay. There is no evidence that Mr. Robinson's children joined in this suggestion or were willing to put themselves under obligation to pay the interest. The note appeared to the executor to be a valueless addition to the $1,500, and that price appeared to him to be so small that he refused to accept it.

In the spring of 1890 Mr. Robinson died, and the executor then sold under the power contained in the trust-deed. The sale was managed by E. S. Robinson, a son of William Robinson, who was a lawyer in Petersburg. It appears that there were only three bids at the sale—one by a stranger, one by the executor for $1,400, and the third and final bid by the brother of the lawyer who conducted the sale, for $1,500, to whom the property was struck down. The wife of William Robinson is the executor's sister, and the lawyer who conducted the sale and the purchaser who bought at the sale were his nephews, and, as well, the sons of the deceased debtor. The result of the sale was, that the property was retained in the Robinson family.

The executor paid his lawyer-nephew, E. S. Robinson, $100 for his services in the foreclosure, in addition to $9.50, the ex-

pense of advertising the sale of the property, and $37.50 auctioneer's fees.    Besides, he asks allowance for $60, his personal expenses in attending the sale, making the entire expense of the sale $207, which, deducted from the $1,500 bid for the property, leaves the fund $1,293.

After the sale the executor again accounted, charging himself with all the interest received from William Robinson and all the income had from the farm, together with the $1,500 realized at the sale of the farm, and praying allowance for the same interest and income paid over to Caroline McCully, and the $207, expense of the sale.    To this account the appellant filed exceptions on the ground that the executor did not charge himself with all the interest due upon Robinson's bond and with the whole principal sum of $3,000.

The appellant undertook the burden of maintaining her exceptions, and called the executor as a witness and examined him, resting her case substantially upon his testimony.

I think that the form of the account was wrong.    The accountant should have charged himself with the whole $3,000 and the interest and income actually received, and should have prayed allowance for loss in principal through the inadequate value of the property upon the security of which it was invested.

Although I have not the account of 1883 before me, I presume it exhibits a balance, which includes this $3,000.    Whatever else there was in the balance, I presume, was distributed immediately after the former accounting.    By that accounting the executor was chargeable with the $3,000.    The present account should have started with the balance upon that accounting, from which the executor had not been discharged.

For this reason, I think that the exception that he did not charge himself with the $3,000, in matter of form, was well taken and should have been allowed.

Such a charge would have thrown the burden of proving the discharge he was obliged to ask for upon the executor.    The form of accounting adopted invited an exception which would charge the executor, and, bearing in mind the rule that in matters of charge the burden of proof is with the exceptant, and in

matters of discharge the burden of proof is with the accountant, it is perceived that the effect of the form was advantageous to the executor in throwing the burden of proof, improperly, upon the exceptant. The proper course of the exceptant, in such a situation, was to demand, under her exception, that the account be restated in proper form, so that the accountant should be put to the proof of the allowances he needed. I think that now the account should be restated in this shape, and that I should regard the accountant as having the burden of proof.

But the inquiry already had is not wholly useless. The proofs satisfy me that the executor should not be held responsible for any loss by reason of the depreciation of the value of the encumbered property. I am unable to perceive how more could have been realized for the property by sale of it before 1890. It is true, between the testator's death and 1885, William Robinson was not known to be bankrupt, but it does not appear that anything could have been recovered from him by suit upon the bond. He is shown to have been burdened with a family and to have been in receipt of a very small income. The *cestuis que trust* evidently, without apprehension of loss, acquiesced in the continuance of the loan to the time of the failure. Under all the circumstances surrounding the loan, and in view of the character and pursuits of Mr. Robinson and the relationship of all parties, debtor, *cestuis que trust* and trustee, I think it would be an unjustifiable hardship to charge the executor for failure to collect the mortgage before 1885. It is quite clear that after 1885 the property had little market value, and that the executor, in the *bona fide* exercise of his judgment, delayed its sale in the hope that something would transpire which would enable him to realize a larger price than $1,500 for it. It was in the exercise of such judgment that he, at one time, refused to sell for $1,500 and the note of the bankrupt Robinson for $1,000.

The only part in his conduct with which I am not satisfied is the ultimate sale of the property. He sold it under the guidance of a nephew, who, by his correspondence, appears to have misrepresented the law to the executor, and to have been

McCully v. Lum.

unfriendly to the trust, and so interested as to be an unfit adviser and attorney.  It has not been shown how extensively the sale was advertised ; what the attendance at it was ; what effort was put forth to obtain the full value of the property, and what portion of the fair value of the property was in fact obtained.  The executor should have been required to make complete and full disclosure in these respects, not only by his own oath, but also by corroborative proofs beyond all suspicion of bias or interest and entitled to the court's full credence.  He should have shown that ample publicity was given to the sale, and that it was so fairly conducted that the fair value of the property was obtained. I judge, from the proofs, that there was no other advertisement than that which the strict compliance with the conditions of the trust required, and I am, I think, by the meagre disclosures concerning the sale, made justly suspicious that it was conducted so that the land might be bought in by a member of the Robinson family.  Indicia of a collusive sale exist, which the executor should be required to explain by the clearest and most satisfactory proof, so that it shall plainly appear that the sale was so conducted as to subserve the best interest of his trust and realize the fair value of the encumbered property, and not so as to put the title of the land in his sister's son for less than its value.

I will reverse the order of the orphans court disallowing the exceptions, and send this matter back to that court that the account may be restated in the manner I have suggested.

To the restated account, an exception must be permitted which will require the executor to prove the character of his sale in the particulars I have indicated.  The charge of his dereliction of duty in other respects will be regarded as adjudicated.  Question as to allowance of commissions must await the finding in regard to the sale.

There will be no costs allowed upon this appeal.